UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-62464-CIV-COHN/SELTZER

PAULA GRACE WILLIS,

    Plaintiff,

v.

DHL GLOBAL CUSTOMER SOLUTIONS
(USA), INC.,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant DHL Global Customer Solutions (USA), Inc.'s Motion for Summary Judgment [DE 22] ("Motion"). The Court has considered the Motion, Plaintiff Paula Grace Willis's Response [DE 29] ("Response"), Defendant's Amended Reply [DE 34] ("Reply"), the parties' related submissions, and the record in this case, and is otherwise advised in the premises.

### I.  BACKGROUND

Plaintiff Paula Grace Willis worked for Defendant DHL Global Customer Solutions, Inc. from May 22, 2006 to December 15, 2006. Deposition of Paula Grace Willis [DE's 23-1, 28-1] ("Willis Deposition") at 41:2-3. Plaintiff first met with representatives of Defendant in March 2006, at an MBA career fair. Id. at 141:24-142:4. After interviewing her, Defendant hired Plaintiff to work as a supply chain system consultant in Michael Zabawa's department. Id. at 41:4-10; 142:8-12; 66:9-67:15.

Plaintiff contends that "[s]hortly after [her] hire . . . Michael Zabawa began to

belittle, degrade, and harass Plaintiff." Plaintiff's Amended Response to Defendant's Statement of Undisputed Material Facts and Statement of Material Facts [DE 30] ("Plaintiff's Facts") at 5.  Beginning in July 2006, Plaintiff reported her concerns to Defendant's Human Resource's department, both verbally and through emails.  See Willis Dep. at 58:4-25, 59:1-10.  According to Plaintiff, her complaints "were primarily about Michael Zabawa, you know, harassment, discrimination, being treated differently, working in a hostile environment, calling out the fact that I noticed that I am the only one being treated this way."  Id. at 59:13-17.  Jennifer Pottinger, from Defendant's Human Resources Department, remembers that "[i]n general [Plaintiff] talked about how [Mr. Zabawa] was complaining about her performance, that he knew her performance level based on her limited experience when he hired her and she didn't agree with the performance assessment of his on her performance."  Deposition of Jennifer Pottinger [DE's 23-2, 28-4] ("Pottinger Deposition") at 26:23-25, 27:1-3.

On October 26, 2006, Plaintiff applied for a position in another division at Defendant's company, led by Michael Terhoeven.  Willis Dep. at 127:1-9; Ex. 8 to Willis Dep. [DE 23-1 at 50].  The same day, she emailed with Mr. Zabawa about finding a new position on Mr. Terhoeven's team.  See Ex. 9 to Willis Dep. [DE 23-1 at 56]; Willis Dep. at 137:17-25.  Mr. Zabawa endorsed Plaintiff's efforts to find a new position, and Plaintiff thanked him for his offer to help her secure a new role at the company.  Ex. 9 to Willis Dep.

On December 5, 2006, when Plaintiff had not yet secured a new position, Mr. Zabawa emailed Plaintiff to confirm a discussion that they had regarding his

department's upcoming restructuring.[1]  Ex. 13 to Willis Dep. [DE 23-1 at 72-73].  Mr. Zabawa explained that Plaintiff's position would be eliminated, that Plaintiff should increase her efforts to find a new position with Defendant's company by December 15, 2006, and that Mr. Mr. Zabawa would help support her transition.  Id.  Mr. Zabawa also wrote, "If internal position is not secured by this date, [December 15, 2006,] then [Plaintiff] is aware that her current position in SCL will be terminated on 1/15."  Id.  In her response to that email, Plaintiff expressed that she intended to keep working in her current position until she secured a formal offer from a hiring manager in the company, and she did not agree to the December 15, 2006 deadline.  Id.  She also expressed disagreement with a "1/15" termination date and reiterated her reasons for wanting to leave Mr. Zabawa's division.  See id.

Ultimately, on December 15, 2006, Defendant terminated Plaintiff's employment, explaining that "due to business restructuring, your employment at DHL will be impacted and as a result will end on December 15, 2006."  Ex. 14 to Willis Dep. [DE 23-1 at 75]; Willis Dep. at 41:3.  Plaintiff then learned, in January 2007, that she did not get the position she had applied for in Mr. Terhoeven's department.  See Willis Dep. at 179:19-25, 180:1-4.

In this case, Plaintiff contends that Defendant terminated her from Mr. Zabawa's department and then failed to hire her for Mr. Terhoeven's department because she complained about "racial harassment and racial discrimination."  See, e.g., Compl. ¶¶

---

[1] In late 2005, before Defendant hired Plaintiff, Defendant had merged with Excel.  Pl.'s Facts at 5 (characterizing this fact as a "*Stipulated fact.*").

17, 18.[2]  Plaintiff describes herself as a "black woman,"[3] id. at 25:12; 25:5-6, and states that "[a]s the lone Jamaican, black female in the Department, Plaintiff naturally perceived that as a factor in Michael Zabawa's maltreatment of her," Pl.'s Facts at 6.

On November 24, 2010, Plaintiff filed this action in the Circuit Court of the 17th Judicial Circuit in and for Broward County Florida, Complaint [DE 1 at 9-18], alleging that Defendant retaliated against her in violation of the Florida Civil Rights Act, Florida Statutes § 760.10 et seq., ("FCRA") (Counts I and II) and 42 U.S.C. § 1981 (Counts III and IV).  Thereafter, on December 20, 2010, Defendant removed the action to this Court.  Notice of Removal [DE 1 at 1-3].  On August 5, 2011, Defendant filed its Motion, seeking summary judgment in its favor on all counts.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must show that "there is an

---

[2]  Though one paragraph of Plaintiff's Complaint mentions "opposition to the gender discrimination and sexual harassment occurring within Defendant's workplace," Compl. ¶ 20, she does not appear to bring any gender discrimination or sexual harassment charges.  Instead, she brings discrimination and harassment claims based on race.

[3]  Plaintiff indicates that she is "black," and not "African-American or African." Willis Dep. at 25:5-6, 25:12.

4

absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### III. ANALYSIS

Defendant seeks summary judgment on all of Plaintiff's claims. Regarding Plaintiff's FCRA claims, Defendant argues that the claims are time-barred and fall outside the scope of the underlying Charge of Discrimination [DE 23-8] ("EEOC Charge") filed with the Equal Employment Opportunity Commission ("EEOC"). As for Plaintiff's § 1981 claims, Defendant argues that Plaintiff has not made out a *prima facie* case of retaliation, and that even if she has, Defendant had a legitimate, non-retaliatory, and non-pretextual reason for engaging in the alleged adverse employment actions.

For the reasons discussed below, the Court will deny Defendant's request for summary judgment as to the FCRA claims, but will grant the request for summary judgment as to the § 1981 claims.

### A. FCRA Claims
### (Counts I and II)

In its Reply, Defendant "withdraws its argument that Plaintiff's FCRA claims are procedurally-barred," Reply at 4 n.2, but contends, "This is of no consequence to [Defendant's] Motion for Summary Judgment on all Counts of the Complaint because [Plaintiff's] FCRA claims are based on the same facts as her § 1981 claims," id. Defendant thus argues for the first time in its Reply that Plaintiff's failure to prove a *prima facie* case and failure to establish pretext bars her FCRA claims in addition to her § 1981 claims. Because Defendant failed to include this argument in its Motion, Plaintiff has not had an opportunity to respond to Defendant's argument as it relates to the FCRA claims. Indeed, Plaintiff specifically noted in her response that the only arguments directed to the FCRA claims were those regarding the timeliness of the Complaint and the scope of the claims in the EEOC Charge compared to the FCRA claims in the Complaint. See Resp. at 6. Thus, Plaintiff only responded to those arguments.

Pursuant to Local Rule 7.1(c), a "reply memorandum shall be strictly limited to rebuttal of matters raised in the memorandum in opposition." S.D. Fla. L.R. 7.1(c). Judges in this district, therefore, have repeatedly rejected attempts by parties to raise new arguments in reply memoranda. See, e.g., Flamenbaum v. Orient Lines, Inc., Case No. 03-22549-Civ, 2004 WL 1773207, at *14 (S.D. Fla. July 20, 2004); Plante v.

USF&G Speciality Ins. Co., Case No. 03-23517-Civ, 2004 WL 741382, at *5 n.3 (S.D. Fla. March 2, 2004); Martinez v. Weyerhaeuser Mortg. Co., 959 F. Supp. 1511, 1515-16 (S.D. Fla. 1996); see also United States v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004) (explaining that arguments first raised in reply brief are not properly before appellate court).

Consequently, in deciding the instant Motion, the Court will not consider Defendant's new arguments with respect to Plaintiff's FCRA claims. Instead, the Court will deny summary judgment on Counts I and II due to Defendant's withdrawal of its original arguments relating to the FCRA claims. The Court goes on to address the remaining arguments relating to Counts III and IV, Plaintiff's § 1981 claims.[4]

---

[4] Defendant also argues in its Reply that the Court should disregard any new facts included in Plaintiff's Facts for violation of Local Rule 7.5(c), and that the Court should deem Defendant's facts admitted under Local Rule 7.5(d). Southern District of Florida Local Rule 7.5(c) provides as follows:

> The statement of material facts submitted either in support of or in opposition to a motion for summary judgment shall:
>
> (1) Not exceed ten (10) pages in length;
>
> (2) Be supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court; and
>
> (3) Consist of separately numbered paragraphs.
>
> Statements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant, but need not repeat the text of the movant's paragraphs. Additional facts which the party opposing summary judgment contends are material shall be numbered and placed at the end of the opposing party's statement of material facts; the movant shall use that numbering scheme if those additional facts are addressed in the reply.

S.D. Fla. L.R. 7.5(c). Southern District of Florida Local Rule 7.5(d) provides as follows:

## B. Section 1981 Claims
## (Counts III and IV)

Pursuant to 42 U.S.C. § 1981, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Although the statute does not explicitly mention retaliation, § 1981 also encompasses retaliation claims. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008); Worley v. City of Lilburn, 408 Fed. App'x 248, 250 (11th Cir. 2011).

The elements required to establish a *prima facie* claim for retaliation under § 1981 are identical to those required under Title VII. Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008). Under either statute, the plaintiff must prove that (1) she engaged in statutorily protected activity, (2) she suffered a materially

---

> All material facts set forth in the movant's statement filed and supported as required by Local Rule 7.5(c) will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record.

S.D. Fla. L.R. 7.5(d).

Plaintiff's Response to Defendant's Facts and Statement of Material Facts exceeds 10 pages. Plaintiff's response to Defendant's Facts is not supported by references to any pleadings or record evidence, and Plaintiff's additional facts are not written in numbered paragraphs. Defendant notes that Plaintiff's failure to comply with these Local Rules has rendered Defendant "unable to identify which facts are truly 'new' so as to effectively address each." Reply at 3.

Though the Court will not sanction Plaintiff for her counsel's failure to comply with the Local Rules at this time, the Court reminds counsel that the Local Rules are "designed to help the court identify and organize the issues in the case." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). The Court strongly encourages all counsel to comply with the Local Rules in the future.

adverse action, and (3) there was a causal link between the two events.  Id.; E.E.O.C. v. Reichhold Chems. Inc., 988 F.2d 1564, 1571 (11th Cir. 1993).  The Eleventh Circuit "construes the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'"  Goldsmith,513 F.3d at 1278 (quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir.1998); see also Reichhold Chems., 988 F.2d at 1571-72 (same).  Once the plaintiff establishes a *prima facie* case of retaliation, "[t]he burden of production then shifts to the defendant to establish non-retaliatory reasons for the employment actions."  Reichhold Chems., 988 F.2d at 1572.  If the defendant meets this burden, "[t]he plaintiff can [then] refute these reasons by proving that they are pretextual."  Id.  Though "the burden of production shifts, . . . the burden of persuasion remains with the plaintiff."  Id.

Defendant argues that Plaintiff's § 1981 retaliation claims must fail because she has not demonstrated the protected activity element or the causal link element required for a *prima facie* case.  Further, Defendant argues that even if Plaintiff could make out a *prima facie* case, Defendant had a legitimate, non-retaliatory, and non-pretextual reason for terminating Plaintiff's employment.  Plaintiff responds that she has made out a *prima facie* case, and that Defendant's alleged non-retaliatory reason for her termination is pretextual.

### 1. Protected Activity

Section 1981, like Title VII, prohibits an employer from retaliating against an employee because she "has opposed any practice made an unlawful employment

9

practice . . . , or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e-3(a); see also Wilson v. Farley, 203 Fed. App'x 239, 247 (11th Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). The Eleventh Circuit holds that "Title VII protects not just individuals who have filed formal complaints, but also those who informally voice complaints to their superiors or who use their employers' internal grievance procedures." Shannon v. Bellsouth Telecommc'ns, Inc., 292 F.3d 712, 716 (11th Cir. 2002). To establish the protected activity element of a retaliation claim, the plaintiff "must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002) (quoting Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)). To meet this burden, the "plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that h[er] employer was engaged in unlawful employment practices, but also that h[er] belief was objectively reasonable in light of the facts and record presented." Little, 103, F.3d at 960.

     Defendant suggests that Plaintiff could not have reasonably attributed the underlying incidents in this case to her race, and that "the only reason [Plaintiff] believed that Zabawa's 'hostility' and discrimination' were race-based was because she was the only Black person in her department." Mot. at 12. Defendant highlights the absence of any reference to race-based harassment or discrimination in Plaintiff's verbal and email reports to Amy Steenrod and Jennifer Pottinger of Defendant's Human Resources Department. See Mot. at 10-11. Ms. Pottinger confirmed at her deposition that Mr. Zabawa's only problems with Plaintiff were her lack of experience and

disappointing job performance.  See Pottinger Dep. at 7:9-10, 12:12-19, 14:12-17.  Ms. Pottinger recalled that Plaintiff complained about Mr. Zabawa's assessment of her performance, id. at 17:23-25, 18:1-2, but she did not remember reading anything about race in Plaintiff's complaint, nor did she recall Plaintiff ever presenting herself as a black female and stating concerns related to her race, id. at 24:17-24, 25:1; see also id. at 26:23-25, 27:1-3 ("In general [Plaintiff] talked about how [Mr. Zabawa] was complaining about her performance, that he knew her performance level based on her limited experience when he hired her and she didn't agree with the performance assessment of his on her performance."); id. at 29:4.

Plaintiff's Response represents that "[f]rom review of [Plaintiff's Statement of Material Facts], the Court can easily discern that Plaintiff engaged in opposition to discriminatory harassment or discrimination."  Resp. at 7.  Plaintiff states that she engaged in such opposition "[a]t least five times by e-mail dating all the way from August 2006 until December 5, 2006, ten days before her actual termination," id., and that "Plaintiff has testified that she had numerous ongoing conversations with Jennifer Pottinger and her then manager, Michael Zabawa, regarding the ongoing harassment and discrimination," id.  Though informal conversations such as those Plaintiff references that she had with Human Resources can constitute protected activity, see Shannon, 292 F.3d at 716; Resp. at 7, Plaintiff fails to identify how her conversations and emails could be reasonably interpreted as opposition to *unlawful discrimination*. Plaintiff does not reference any race-based comments or complaints in her conversations.  Indeed, in her 11-page Response to Defendant's Facts and Statement of Material Facts, she does not refer to a single instance of Mr. Zabawa or her then-

11

supervisor, Agustin Cupido's, conduct or comments being specifically related to her race.  See Pl.'s Facts.  Her only statement tying the alleged discriminatory conduct to her race is the following: "As the lone Jamaican, black, female in the Department, Plaintiff naturally perceived that as a factor in Michael Zabawa's maltreatment of her."  Id. at 6.

    Plaintiff argues in her Response that "[t]he best evidence that Plaintiff subjectively perceived this harassment based on race was her use of the term of 'discrimination,' with her knowledge she was the only black in the Department."  Resp. at 9.  However, the term "discrimination," does not necessarily mean *racial* discrimination.  As Plaintiff's Black's Law Dictionary definition demonstrates, "discrimination" also encompasses "[u]nfair treatment or denial of normal privileges to persons because of their . . . age, nationality, or religion."  Resp. at 9 n.8 (citing Black's Law Dictionary).  Plaintiff cites no case law in support of her contention that "discrimination" is synonymous with "racial discrimination."  With respect to Plaintiff's argument that she was the only Black person in Mr. Zabawa's department, Plaintiff is actually mistaken because another employee who was in the same department, Ms. Ines Garcia, was also Black.  Affidavit of Garcia in Support of Defendant's Motion for Summary Judgment [DE 34-1] ("I am a Black female of Cuban descent.").  Plaintiff disputes the fact that she and Ms. Garcia are the same race based the hyper-technical argument that Defendant's employment forms force employees to choose to identify either as "Black," or as "Hispanic," and directs Cuban people to select "Hispanic," Pl.'s Facts at 6 n.3, but this argument is unpersuasive.  Plaintiff's own deposition testimony confirms that she believed that Ms. Garcia was black.  Plaintiff stated, "I believe there

12

was a Hispanic black, Ines Garcia," Willis Dep. at 69:3-4, and "From what I could see [Ms. Garcia is] a black Hispanic female," id. at 70:10-11.  Plaintiff has pointed to no evidence showing that Ms. Garcia, another Black person, was also treated unfairly or subject to any adverse employment action based on her race.  Indeed, Ms. Garcia's states, "I have no recollection of Plaintiff having ever expressed or suggested to me that Mr. Zabawa treated her unfairly or differently than any other employee based on her race, sex, or national origin.  Moreover, I did not experience any such treatment from Mr. Zabawa."  Garcia Aff. ¶ 5.  Therefore, even Plaintiff's "best evidence," Resp. at 9, does not prove, or even raise an issue of material fact, as to whether that the subject of her complaints was an unlawful employment practice.  See Little, 103 F.3d at 960 (affirming summary judgment for employer where employee "did not have an objectively reasonable belief that he was opposing an unlawful employment practice.").

Even if Plaintiff did "naturally perceive" her race to be a factor of any alleged maltreatment, such perception is merely subjective, which is not enough to constitute protected activity under the § 1981 and Title VII framework.  See Little, 103, F.3d at 960.  "It . . . is not enough for a plaintiff to allege that h[er] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable."  Id.  Plaintiff has pointed to nothing in this record demonstrating that her belief that Mr. Zabawa's actions were race-based was objectively reasonable.

As the party opposing summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  She must "properly support [her] assertion[s] of fact [and] properly address

[Defendant's] assertion of fact." Fed. R. Civ. P. 56(e)(3). Plaintiff has not done so here. Therefore, Plaintiff has not proved that she engaged in protected activity, and consequently cannot prove her *prima facie* retaliation claim under § 1981. Accordingly, the Court will enter summary judgment in Defendant's favor on Plaintiff's § 1981 claims.

## 2. Causal Relation

In addition to her failure to prove that she engaged in protected activity, Plaintiff also failed to demonstrate the causal relation between her complaints and Defendant's failure to hire her for Mr. Terhoeven's department, and she failed to show that Defendant's non-retaliatory reason for terminating her based on performance and lack of experience was pretextual. The Eleventh Circuit "construes the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Goldsmith, 513 F.3d at 1278 (quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir.1998); see also Reichhold Chems., 988 F.2d at 1571-72 (same). "[C]lose temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated." McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008) (quotations and citations omitted). Yet, "merely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element—for temporal progression to be enough, the events must be in very close proximity." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 978 n.52 (11th Cir. 2008) (quotations and citations omitted). At the same time, "a decision maker cannot have been motivated to retaliate by something unknown to him." Brungart v. BellSouth Telecomm'ns, Inc., 231 F.3d 791, 799 (11th Cir. 2000).

Turning first to Count IV, which alleges retaliation based on failure to hire, the Court finds that Plaintiff has not demonstrated the requisite causal connection. As Defendant notes, "Plaintiff does not have any proof that Terhoeven . . . had any knowledge whatsoever that Plaintiff had ever made any complaints of any kind." Mot. at 17. Mr. Zabawa does not recall ever telling Mr. Terhoeven about Plaintiff's complaints. Deposition of Michael Zabawa [DE's 23-3, 28-2] ("Zabawa Deposition") at 20:11-14. Though Plaintiff mentioned at her deposition that she told Mr. Terhoeven about her layoff, Willis Dep. at 136:17-21, she does not state that she informed him about any complaints she made. Plaintiff has pointed to no other evidence demonstrating that Mr. Terhoeven had any knowledge of any complaints she made. Indeed, she states in her Response that "[Defendant] argues that Terhoeven had no knowledge of Willis' complaints, but there is no evidence to support that." Resp. at 13. Plaintiff bears the burden to prove her *prima facie* case, Goldsmith, 513 F.3d at 1277, so she is the party that must present evidence that Mr. Terhoeven knew of her complaints, not vice versa. Plaintiff also bears a burden, as the non-movant at summary judgment, to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Despite the fact that Defendant has pointed to evidence in the record suggesting that Mr. Terhoeven did not know of Plaintiff's complaints, Plaintiff has not pointed to any evidence showing that he did know of the complaints. Therefore, Plaintiff has not met her burden with respect to proving her *prima facie* case or with respect to opposing Defendant's Motion for Summary Judgment. Accordingly, in addition to the fact that Plaintiff has not demonstrated that she engaged in protected activity, with respect to Count IV, based on

15

Defendant's failure to hire Plaintiff for Mr. Terhoeven's department, see Compl. at 17-18, Plaintiff also has not met her burden as to the causation element.

As for Count III, which relates to Plaintiff's termination, Defendant maintains that the temporal proximity between Plaintiff's July 31, 2006 complaint to Human Resources and Defendant's December 15, 2006 decision to terminate her and January 2007 decision not to hire her is not enough to prove causation. See Mot. at 16-17 (citing Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We are not persuaded that three months . . . is sufficiently proximate to show causation), Higdon v. Jackson, 393 F.3d 1211, 1220-21 (11th Cir. 2004) ("By itself, the three month period . . . does not allow a reasonable inference of a causal relation between the protected expression and the adverse action."), and Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) ("three and one-half months temporal proximity is insufficient to create a jury issue on causation."). Yet, the record includes emails and references to conversations that took place after the July 31, 2006 date that Defendant cites. See, e.g., Ex. 13 to Willis Dep. (Dec. 5, 2006 email to Mr. Zabawa); Ex. I to Pl.'s Facts [DE 28-9] (Oct. 20, 2006 email to Ms. Pottinger). Thus, if Plaintiff had demonstrated that she engaged in protected activity, there would at least be a question of fact for the jury as to whether the protected activity was causally related to her termination. Nevertheless, summary judgment would still be warranted on this issue because Defendant has demonstrated that it had a legitimate non-retaliatory, non-pretextual reason for terminating Plaintiff's employment.

Defendant states, "Plaintiff[] was terminated so that DHL could hire a more experienced consultant." Mot. at 18. The facts demonstrate that Defendant

16

restructured Mr. Zabawa's department, eliminated Plaintiff's position, and then sought a more experienced consultant.  <u>See</u> Exs. 13, 14, 17 to Willis Dep.  Ms. Pottinger confirmed that Mr. Zabawa's only problems with Plaintiff were her lack of experience and disappointing job performance.  <u>See</u> Pottinger Dep. at 7:9-10, 12:12-19, 14:12-17, 18.  Defendant has thus shown that Plaintiff was terminated due to performance problems and lack of experience, not because of her race.

In an attempt to prove that Defendant's non-retaliatory reason was pretextual, Plaintiff states, "Zabawa's testimony is the best evidence that the real reason for Plaintiff Willis' termination was retaliation."  Resp. at 11.  She then cites Mr. Zabawa's statements that everyone in the department had trouble with the Exel transition and that he could not recall any specific skills that Plaintiff lacked.  <u>See id.</u> (citing Zabawa Dep. at 17).  Plaintiff's argument is not persuasive.  Nothing in Mr. Zabawa's testimony proves or suggests that Plaintiff's termination was race-based rather than performance-based.  Plaintiff also points to the fact that she was hired in May 2006, six months after the December 2005 Exel acquisition, and that she was the only person terminated in the restructuring, but again, this does not demonstrate that her termination was pretextual.  As discussed above, Plaintiff was not the only Black person in Mr. Zabawa's department, and Ms. Garcia, who was also Black, was not terminated.  <u>See</u> <i>supra</i>.  Finally, Plaintiff lists the following items as "Additional evidence of pretext and causation":

- Michael Zabawa promises Plaintiff Willis he will help with transfer while privately telling Jennifer Pottinger he wants to terminate Plaintiff Willis;

- Jennifer Pottinger recommends Michael Zabawa provid[e] training to

17

        Plaintiff Willis but Zabawa never does;

- the "Grace Willis Resignation.doc" computer file;

- the missing Human Resources file, once in existence and now forever gone;

- the November 7, 2006[] employee Profile printed form not executed until mid December;

- the termination on the same day that Plaintiff Willis was scheduled for a second interview with Michael Terhoeven; and

- the resignation bait and switch ploy.

Resp. at 12-13. Plaintiff provides no factual explanation or legal support as to why any of these alleged facts constitute evidence of pretext. See id. Plaintiff does not refute that Defendant made a business decision to restructure and to eliminate its most junior person, nor can the Court second-guess a business decision such as this. See Rowell v. BellSouth Corp., 433 F.3d 794, 798 (11th Cir. 2005) ("It is by now axiomatic that we cannot second-guess the business decisions of an employer") (citing Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1092 (11th Cir. 2004)). As such, Plaintiff has not met her burden to show that Defendant's non-retaliatory reason for terminating her was pretextual. See Reichhold Chems., 988 F.2d at 1572. Therefore, even if Plaintiff had shown that she engaged in protected activity, and even if she had met her burden to prove causation, she still could not prevail on her claim for retaliatory termination in Count III because Defendant had a legitimate, non-retaliatory, and non-pretextual reason for terminating her.

## IV.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant DHL Global Customer Solutions (USA), Inc.'s Motion for Summary Judgment [DE 22] is **DENIED** with respect to Count I and Count II, Plaintiff's claims under the Florida Civil Rights Act;

2. Defendant DHL Global Customer Solutions (USA), Inc.'s Motion for Summary Judgment [DE 22] is **GRANTED** with respect to Count III and Count IV, Plaintiff's claims under 42 U.S.C. § 1981;

3. The Court will enter a separate judgment consistent with this ruling.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 7th day of October, 2011.

_____
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF